IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMERICAN COMPUTER
DEVELOPMENT, INC.
*Plaintiff*,

v.

Civil No. ELH-14-00808

MCKINLEY-ROSS CORPORATION
*Defendant*.

## MEMORANDUM

American Computer Development, Inc. ("ACDI"), plaintiff, has filed suit against McKinley-Ross Corporation ("McKinley"), defendant, alleging breach of contract and, in the alternative, unjust enrichment.[1]  ECF 1.  Plaintiff's complaint is supported by several exhibits.

According to ACDI, the parties entered into a contract by which ACDI provided engineering services and goods at the request of McKinley, for which McKinley failed to pay the sums due and owing.  *Id.*  Plaintiff claims that, as a proximate result of McKinley's breach of contract, ACDI suffered damages in the amount of $135,512.85.  *Id.*  In addition, plaintiff seeks prejudgment interest as well as reasonable attorneys' fees.  *Id.*

McKinley filed an answer to the complaint.  *See* ECF 8.  Thereafter, on September 19, 2014, McKinley's attorneys sought leave to withdraw from their representation of defendant. *See* ECF 17; ECF 18; ECF 20.  On September 22, 2014, the Court issued an Order to McKinley, advising of its need to secure replacement counsel.  *See* ECF 19.

On October 27, 2014, the Court granted the motion to withdraw.  *See* ECF 21.  However, no attorney has ever entered an appearance for McKinley, notwithstanding that a corporation

---

[1] Jurisdiction is founded on diversity of citizenship, pursuant to 28 U.S.C. § 1332.

may appear in federal court only through licensed counsel. *See Rowland v. California Men's Colony*, 506 U.S. 194, 201 (1993); Local Rule 101.1a ("All parties other than individuals must be represented by counsel.").

Now pending is ACDI's Motion for Summary Judgment ("Motion," ECF 24), filed on December 2, 2014, supported by a legal memorandum and several exhibits, as well as the Affidavit of Michael Kish, Chief Financial Officer for ACDI (ECF 24-1), and the Affidavit of Jeffrey Goldstein, Esquire, counsel for ACDI (ECF 24-7). No response has been filed as to the Motion and the time to do so has long expired.

## I.   Factual Summary

The record reflects that the initial request for the purchase of services was set forth in an email of April 27, 2012, between Vice President of Sales and Marketing for ACDI, Nicole Moreland, and the President of McKinley, Millard Minton. *See* ECF 24-2. On June 28, 2012, ACDI sent McKinley an invoice in the amount of $20,800 for the requested engineering services. *See* ECF 24-3. On the reverse side of the invoice of June 28, 2012, is a document titled "Terms and Conditions of Sales." *See* ECF 24-4.

ECF 24-5 consists of numerous invoices beginning with June 28, 2012, and continuing through January 27, 2014. According to plaintiff, each invoice was sent to defendant with the same "Terms and Conditions." ECF 24-1 ¶¶ 14, 15. And, the record is devoid of any evidence of any objection by defendant to these terms and conditions. Therefore, there is no factual basis to conclude that these terms and conditions were refuted, disputed, or challenged by McKinley. To the contrary, and at the very least, it would appear that the terms and conditions were impliedly accepted.

Pursuant to ¶ 3 of the Terms and Conditions, the balance due on unpaid invoices accrued interest at the rate 1 1/2% per month, or 18% per year.  *See* ECF 24-4.

Paragraph 6 of the Terms and Conditions states, in part:  "Upon any breach by Customer [i.e., defendant] of these terms and conditions, ACDI will have all rights and remedies of the secured parties under applicable law, which rights and remedies will be cumulative and not exclusive.  Customer is responsible for all costs and expenses incurred by ACDI in collecting any sum owing by Customer (which may include, but are not limited to, collection agency and reasonable attorneys' fees)."  *Id.*

Additional facts are included in the Discussion.

## II.  Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a).  It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

"A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). However, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, __ F.3d ___, No. 13-2212, slip op. at 12 (4th Cir. March 12, 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Indeed, in the face of conflicting evidence, such as competing affidavits or conflicting deposition testimony, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See, e.g.*, *Boone v. Stallings*, 583 Fed. App'x 174 (4th Cir. 2014) (per curiam).

If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Anderson*, 477 U.S. at 248.

*See Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).   On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

### III. Discussion

The uncontroverted affidavit of Michael Kish, CPA, provided under penalty of perjury, establishes that McKinley failed to pay invoices totaling $135,512.85.   Further, Kish's affidavit, supported by ECF 24-6, establishes prejudgment interest due and owing as of December 2, 2014, in the sum of $35,085.11, pursuant to the terms and conditions attached to each invoice.

Plaintiff has not provided the Court with any legal authority that would support its contention that McKinley is bound by the terms and conditions that apparently were not part of the original contract negotiations, but were included with the first invoice, issued June 28, 2012. *See* ECF 24 at 4.   If the invoice of June 28, 2012, were the only invoice, I might be inclined to reject plaintiff's reliance on these terms and conditions as a basis to bind McKinley to them. However, the parties' relationship continued through early 2014, a considerable period after the initial invoice of June 28, 2012.   *See* ECF 24-5.   According to plaintiff, defendant placed many orders after June 28, 2012, and each subsequent invoice contained the same terms and conditions included with the invoice of June 28, 2012.   *Id.*; ECF 24-1 ¶¶ 14, 15; ECF 24-4.   There is no evidence in the record that McKinley ever challenged or disputed these terms and conditions.   To the contrary, as indicated, it repeatedly ordered additional services, with full knowledge of the terms and conditions.   Therefore, I am satisfied that defendant agreed to them.   *See, e.g.*, *Edell & Associates, P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 439, 436 (4th Cir. 2001) (reversing summary judgment for defendant where reasonable jury could find defendant modified contract to include contingency fee where plaintiff repeatedly indicated, including

through invoices, that it expected to share in the contingency fee and defendant did not timely object) (citing, *e.g.*, "*Cole v. Wilbanks*, 226 Md. 34, 171 A.2d 711, 712 (1961) ('Assent to an offer to vary, modify or change a contract may be implied and found from circumstances and the conduct of the parties showing acquiescence or agreement.')").

I turn next to plaintiff's request for counsel fees, which is based on the terms and conditions integrated into the invoices.

In a diversity action, such as this one, a parties' right to recover attorneys' fees is "ordinarily governed by state law." *See Ranger Const. Co. v. Prince William Cnty. Sch. Bd.*, 605 F.2d 1298, 1301 (4th Cir. 1979); *Roahn Prods. Int'l, LC v. Sofietel A Corp.*, Civil No. WDQ-06-504, 2010 WL3943747, at *4 n.13 (D. Md. Oct. 7, 2010) ("'In a diversity case, absent a conflicting applicable federal rule of procedure, state law governs not only the actual award of attorneys' fees but also the method of determining those fees.'" (citation omitted)); *Glassman Const. Co. v. Md. City Plaza, Inc.*, 371 F. Supp. 1154, 1162 (D. Md. 1974).[2]

In Maryland, "[c]ontract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable . . . ." *Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520, 532 (2006). "Even in the absence of a contract

---

[2] In a diversity case, a court applies the choice-of-law rules of the forum state. As to contract actions, Maryland courts ordinarily apply the law of the jurisdiction where the contract was made, under the principal of *lex loci contractus*. *Erie Insurance Exchange v. Haffernan,* 399 Md. 598, 618, 925 A.2d 636, 648 (2007). However, it is not necessarily clear whether the state law that governs an award of attorneys' fees is the law of the forum state or, instead, the law of another state, if the other state's law are applicable to the substantive issues being litigated, under the forum state's choice-of-law rules. *See generally Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 796-97 (8th Cir. 2005) ("[O]ur conclusion that the matter of attorney's fees is 'substantive' for purposes of [the *Erie* Doctrine]—such that state rather than federal law governs—does not necessarily establish that the issue of attorney's fees is 'substantive' rather than 'procedural' for purposes of conflict of laws. The two inquiries are distinct.") (citing *Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988)). In any event, it seems clear that Maryland law applies here.

term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." *Id.* at 207, 892 A.2d at 532; *see Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 316, 844 A.2d 460, 478 (2004); *SunTrust Bank v. Goldman*, 201 Md. App. 390, 398, 29 A.3d 724, 730 (2011) ("Current law allows a court to grant only those attorneys' fees it finds reasonable."). Thus, "courts must routinely undertake an inquiry into the reasonableness of any proposed fee before settling on an award." *Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton*, 416 Md. 325, 333, 7 A.3d 1, 5 (2010). The "reasonableness of attorney's fees is a factual determination within the sound discretion of the court." *Myers*, 391 Md. at 207, 892 A.2d at 532.

"'The burden is on the party seeking recovery to provide the evidence necessary for the fact finder to evaluate the reasonableness of the fees.'" *Ulico*, 380 Md. at 316, 844 A.2d at 478 (citation omitted). Therefore, the party seeking a fee award must provide "'detailed records'" that specify "'the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged.'" *Rauch v. McCall*, 134 Md. App. 624, 639, 761 A.2d 76, 84 (2000) (citation omitted), *cert. denied*, 362 Md. 625, 766 A.2d 148 (2001). "'[W]ithout such records, the reasonableness, vel non, of the fees can be determined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence.'" *Id.* at 639, 761 A.2d at 85 (citation omitted).

In Maryland, under a contractual fee-shifting provision in a dispute between private parties over breaches of contract, a court "should use the factors set forth in Rule 1.5 [of the Maryland Rules of Professional Conduct ("MRPC")] as the foundation for analysis of what constitutes a reasonable fee when the court awards fees based on a contract entered by the parties authorizing an award of fees." *Monmouth Meadows*, 416 Md. at 336-37, 7 A.3d at 8.

MRPC 1.5(a) is a standard of professional ethics, generally applicable to all attorney-client relationships, which mandates that an attorney "shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."  It enumerates eight non-exclusive "factors to be considered in determining the reasonableness of a fee."  They are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

"In order to apply Rule 1.5 to a fee award, a court does not need to evaluate each factor separately," nor must it necessarily hold an evidentiary hearing.  *SunTrust*, 201 Md. App. at 402, 29 A.3d at 730; *see Monmouth Meadows*, 416 Md. at 337 n.11, 7 A.3d at 8 n.11.[3]  Moreover, when conducting an MRPC 1.5 analysis, a court "should consider the amount of the fee award in relation to the principal amount in litigation. . . .  Although fee awards may approach or even exceed the amount at issue, the relative size of the award is something to be evaluated." *Monmouth Meadows*, 416 Md. at 337, 7 A.3d at 8.  And, a "trial court also may consider, in its

---

[3] Indeed, a court need not "make explicit findings with respect to Rule 1.5" at all, or even "mention Rule 1.5 as long as it utilizes the rule as its guiding principle in determining reasonableness."  *Monmouth Meadows*, 416 Md. at 340 n.13, 7 A.3d at 10 n.13.

discretion, any other factor reasonably related to a fair award of attorneys' fees." *Id.* at 337–38, 7 A.3d at 8.

Cases decided under the lodestar approach, applicable to fee-shifting statutes, can "provide helpful guidance" in contractual fee-shifting cases, *Congressional Hotel Corp. v. Mervis Diamond Corp.*, 200 Md. App. 489, 505, 28 A.3d 75, 85 (2011), because "there is likely to be some overlap between the Rule 1.5 factors and the mitigating factors typically considered in a lodestar analysis." *Monmouth Meadows*, 416 Md. at 337, 7 A.3d at 8.   Indeed, the Maryland Court of Appeals has adopted for use in lodestar cases a list of factors similar to the list in the MRPC 1.5, often called "*Johnson* factors," enunciated in the seminal case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).   *See, e.g., Friolo v. Frankel*, 373 Md. 501, 522 n.2, 819 A.2d 354, 366 n.2 (2003).   And, because the Fourth Circuit relies on the same "*Johnson* factors" in considering fee awards under federal fee-shifting statutes, *see Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978), practices with regard to attorney's fees in this Court and the Fourth Circuit generally provide helpful guidance.

With respect to the hourly rate, the Fourth Circuit follows the "locality rule," by which "'[t]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.'" *Montcalm Pub. Corp. v. Commonwealth of Virginia*, 199 F.3d 168, 173 (4th Cir. 1999) (citation omitted).   Ordinarily, "[e]vidence of the prevailing market rate . . . takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate." *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000).

"In the District of Maryland, this market knowledge is embedded in the Guidelines." *Gonzalez v. Caron*, Civil No. CVD-10-2188, 2011 WL3886979 at *2 (D. Md. Sept. 2, 2011). The Guidelines, Appendix B to the Local Rules of this Court, set forth advisory fee ranges for

attorneys based on years of experience.   The rates "are intended solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees," and "may serve to make the fee petition less onerous by narrowing the debate over the range of a reasonable hourly rate in many cases."   Guidelines § 3 n.6.   Although the fee ranges are not binding on the Court, the Court generally "presumes that a rate is reasonable if it falls within these ranges."  *Gonzales*, 211 WL3886979 at *2.

Jeffrey Goldstein, Esquire has submitted an affidavit advising that he is a member of the Bar of the courts of Maryland, the Commonwealth of Virginia, and the District of Columbia. ECF 24-7 ¶ 1.  He claims a normal and customary billing rate of $375 per hour.  *Id.* ¶ 3.  He states that he is "familiar with the hourly billing rates of similarly situated attorneys in the Washington, D.C., metropolitan area", *id.* ¶ 4, and that his rate "is consistent with the rates of similarly situated attorneys in" the area.   *Id.* ¶ 5.   However, he has not provided any corroborating affidavits from other attorneys, or indicated the year in which he was admitted to the Bar of a particular court.

Pursuant to Appendix B, lawyers admitted to the Bar for 15-19 years are entitled to recommended hourly rates ranging from $275 to $425.   However, the Court is unable to determine on the face of Goldstein's Affidavit whether he qualifies for an hourly rate of $375, as requested.

Goldstein seeks compensation for 15.9 hours of work, totaling $5,962.50 (plus $485 in court costs).   Reviewing the docket, the expenditure of 15.9 hours of work, as claimed by Goldstein, appears reasonable and necessary.   It is a relatively small expenditure of time, given the amount of damages sought by plaintiff.   However, no billing records were attached to explain or justify the 15.9 hours.   And, as noted, the hourly rate of $375 is an issue.

Because of the deficiency in plaintiff's submission, I will defer ruling on the request for attorneys' fees, pending the submission of a supplemental affidavit and records.

An Order implementing these rulings is attached.

Date: April 21, 2015                                    _____/s/_____
                                                        Ellen L. Hollander
                                                        United States District Judge